J. L. White Furnace Co., Plaintiff, *v.* The C. W. Miller Transfer Co., Defendant.

(Supreme Court, Erie Equity Term, April, 1908.)

Sales — Remedies of purchaser — Recoupment and counterclaim — Breach of warranty as counterclaim — Where parties contracted for exclusive remedy.

> Upon the sale of personal property with an express warranty as to its condition, the vendee, upon a breach of the warranty, has two remedies: (1) he may rescind, return the property and recover what he has paid, or (2) he may retain the property and recover as damages the difference between the actual value and what the value of the property would have been if it had been as warranted.

> Where, however, the contract of sale provides that if, at the expiration of thirty days, it is found that the guaranty has not been complied with, the purchaser will remove the materials constituting a furnace for steam heating, which was the subject of the sale, holding the same subject to the order of the seller, and no payment shall be made, there is a contract for a different and inconsistent relief in the event of a breach of the express warranty, which supersedes the ordinary remedies; and, where the buyer does not pursue this remedy but leaves the furnace in, and makes a payment on account of it, and continues to use it, and the seller files a lien therefor and begins a foreclosure thereof, the buyer may not counterclaim for damages for breach of the warranty, but the seller is entitled to foreclose his lien.

Action to foreclose mechanic's lien.

Thomas R. Stone, for plaintiff.

Kenefick, Cooke & Mitchell, for defendant.

BROWN, J.  The plaintiff proposed in writing, in consideration of $1,500, to instal its improved hollow blast furnace grates in an extension brick furnace to be built in connection with defendant's steam boilers in its livery stable in Buffalo, N. Y., and guaranteed that the furnace would generate steam to the full capacity of the boilers, using a mixture of stable manure and coal as fuel; that no offensive odors would escape from the stack during the operation thereof and that such installation and use would comply with the health ordinances of the city of Buffalo.  The proposition, also, contained this clause, viz.: " If at the expiration of thirty days after the furnaces have been installed it is found that the above guaranties are not complied with, you will remove material holding same subject to our order and no payment shall be made."  ·The defendant accepted such proposition.  In pursuance thereof the plaintiff duly installed such grates and furnaces, completing their erection on December 21, 1906, and the defendant paid the plaintiff the sum of $500.  During December, 1906, and January, 1907, the defendant operated the furnaces by burning a mixture of stable horse manure and coal as a fuel; offensive odors were generated and the guaranty was not complied with.  On January 28, 1907, defendant paid plaintiff the sum of one hundred dollars to apply on the purchase price and continued their operation by use of such fuel up to·June 1, 1907; during all of which time defendant complained to the plaintiff that the guaranty was not complied with; that the furnaces failed to generate steam to the capacity of defendant's boilers; that offensive odors were being produced and that the health authorities were insisting that such use of the furnace was a nuisance and must be discontinued.  The plaintiff claiming that the defendant had accepted the furnaces, the defendant refusing to pay the balance of the purchase price, the plaintiff, on March 21, 1907, filed a mechanic's lien upon the defendant's property for the sum of $930, the balance claimed to be due on the contract, and, on the 15th day of April, 1907, commenced this action to foreclose such lien. It was the claim of the plaintiff that, by proper opera-

ation, the furnaces would comply with the terms of the guaranty; and, for the purpose of satisfying the defendant that the guaranty had been complied with, it was agreed by the parties, on or about June 1, 1907, that plaintiff would take charge of the furnaces and operate them for thirty days to determine the fulfillment or nonfulfillment of the express warranty; and, from June 7, 1907, to about July 14, 1907, the plaintiff did operate such furnaces, but was unable to make them burn stable manure without producing offensive odors. The defendant omitted to avail itself of the means provided in said contract for its relief in the event of the failure to comply with the terms of the warranty, viz.: by removing the material and holding it subject to plaintiff's order; but, instead thereof, retained the furnaces in the same condition as they had been when installed and delivered to the defendant. The defendant, shortly after July 14, 1907, served an answer in this action alleging the failure of the plaintiff to comply with the terms of its warranty and that the damage to the defendant was $2,000, and demanding judgment for that sum against the plaintiff as a counterclaim. Upon the trial, the defendant gave testimony tending to prove that the value of the grates, etc., furnished by the plaintiff did not exceed the sum of $600, and, if they had been as guaranteed, the value of the same would have been $2,600. The defendant now insists that, it having paid plaintiff $600, its measure of damages is $2,000.

The law undoubtedly is that, upon the sale of personal property with an express warranty as to its condition, the vendee, upon a breach of such warranty, has two remedies: *first,* he may rescind, return the property and recover what he has paid; or, *second,* he may retain the property and recover as damages the difference between the actual value and what the value of the property would have been had it been as warranted. It is well settled that an express warranty survives acceptance. The difficulty, however, in applying such rule as the measure of the defendant's damages is that the parties have contracted for a different and utterly inconsistent relief for this defendant in the event of

a breach of this express warranty. It being clearly stated in the contract that, in the event of a failure to comply with the warranty, defendant's remedy is to be a removal by defendant of the furnaces and an exemption from liability for the purchase price, it must be held that this and this only is the relief to which the defendant is entitled. It was perfectly competent for the parties to provide by contract the relief that the defendant should have upon a breach of the warranty. It is very apparent that the success of the furnace to burn fresh stable horse manure was a very doubtful idea. The scheme was somewhat of an experiment and plaintiff had a perfect legal right to shield itself from a liability for the damages now claimed by the defendant; and, under the circumstances, it must be held that it has done so, with defendant's complete acquiescence. The defendant failing to avail itself of its contract remedy in case of a breach, it having retained the furnaces, never having removed the same, never having offered to remove the same, never having notified plaintiff that it held the same subject to plaintiff's order at any time either before or after the thirty-day test in June and July, 1907; the defendant having answered alleging damages for its relief as upon a breach of an express warranty, upon a sale and delivery of personal property, it necessarily follows that it has waived the right to the relief specified in the contract and has become liable to the plaintiff for the balance of the purchase price. Cent. Dig. "Sales," §§ 1221, 1228.

The plaintiff is entitled to the usual judgment of foreclosure.

Judgment for plaintiff.